1  GUIDO SAVERI (22349)
   guido@saveri.com
2  R. ALEXANDER SAVERI (173102)
   rick@saveri.com
3  GEOFFREY C. RUSHING (126910)
   grushing@saveri.com
4  CADIO ZIRPOLI (179108)
   cadio@saveri.com
5  DAVID Y. HWU (281780)
   dhwu@saveri.com
6  SAVERI & SAVERI, INC.
   706 Sansome Street
7  San Francisco, CA 94111
   Telephone: (415) 217-6810
8  Facsimile: (415) 217-6813

9  Attorneys for Plaintiff

10 [Additional Counsel Appear on Signature Page]

11
                    UNITED STATES DISTRICT COURT
12
               NORTHERN DISTRICT OF CALIFORNIA
13
                    SAN FRANCISCO DIVISION
14

15 CHARLES CARTE, on behalf of himself and        )  Case No.
   all others similarly situated,                 )
16                                                 )
              Plaintiff,                           )
17                                                 )  CLASS ACTION
              v.                                   )
18                                                 )  COMPLAINT
   SAMSUNG SDI CO., LTD.; SAMSUNG SDI              )
19 AMERICA, INC.; LG CHEM, LTD.; LG               )  JURY TRIAL DEMANDED
   CHEM AMERICA, INC.; PANASONIC                   )
20 CORPORATION; PANASONIC                         )
   CORPORATION OF NORTH AMERICA;                   )
21 SANYO ELECTRIC CO., LTD.; SANYO               )
   NORTH AMERICA CORPORATION; SONY                 )
22 CORPORATION; SONY ENERGY                        )
   DEVICES CORPORATION; SONY                       )
23 ELECTRONICS, INC.; HITACHI, LTD.;              )
   HITACHI MAXELL, LTD.; AND MAXELL               )
24 CORPORATION OF AMERICA;                        )
                                                   )
25            Defendants,                          )
                                                   )
26 ─────────────────────────────────────

27

28
                       CLASS ACTION COMPLAINT

1  Plaintiff, Charles Carte, individually, and on behalf of a class of all those similarly situated,
2  brings this action for treble damages under section one of the Sherman Act, 15 U.S.C. § 1, and
3  section four of the Clayton Act, 15 U.S.C. § 15, against the defendants named herein. This
4  complaint is based on information and belief, except those paragraphs which relate to plaintiff,
5  which are based on personal knowledge. Plaintiff alleges as follows:

6  **INTRODUCTION**

7  1.  This lawsuit arises out of a contact, combination and conspiracy among defendants
8  and their co-conspirators to fix, raise, maintain and/or stabilize the prices of Lithium-ion
9  Rechargeable Batteries sold directly by the defendants and their affiliates during the period from
10  approximately January 1, 2002 through the present (the "Class Period").

11  2.  The Lithium-ion Rechargeable Battery market is one of the fastest growing markets
12  in the electronics industry. During the Class Period, Lithium-ion Rechargeable Batteries served as
13  one of the main power sources for many electronic devices. Defendants' sales of Lithium-ion
14  Rechargeable Batteries generated billions of dollars in annual revenues and expanded exponentially
15  with the increased utilization of mobile phones and notebook computers throughout the United
16  States.

17  3.  The Department of Justice ("DOJ") launched an investigation into anticompetitive
18  conduct with respect to Lithium-ion Rechargeable Batteries in mid-2011. Many of the Defendants
19  named in this complaint have a long history of engaging in anticompetitive conduct, having
20  consistently sought to fix prices for a wide variety of components for electronic products sold in the
21  United States, such as Dynamic Random Access Memory ("DRAM"), Thin Film Transistor Liquid
22  Crystal Display ("TFT-LCD") panels, Optical Disc Drives ("ODDs") and Cathode Ray Tubes
23  ("CRTs"), among others. Like the previous criminal conspiracies, through the conduct described
24  herein the Defendants entered into an illegal agreement, the object of which was to stabilize the
25  prices for and allocate markets and/or customers with respect to Lithium-ion Rechargeable
26  Batteries.

27  4.  Defendants are the leading manufacturers of Lithium-ion Rechargeable Batteries.
28  Defendants control the majority of the Lithium-ion Rechargeable Battery industry, a multibillion

1  dollar market, which in 2011 alone generated over $14 billion dollars in gross revenue. Plaintiff

2  alleges that during the Class Period, Defendants conspired, combined and contracted to fix, raise,

3  maintain, and stabilize the prices at which Lithium-ion Rechargeable Batteries were sold in the

4  United States.  As a result of Defendants' unlawful conduct, Plaintiff and the other members of the

5  Class paid artificially inflated prices for Lithium-ion Rechargeable Batteries during the Class

6  Period.  Such prices exceeded the amount they would have paid if the price for Lithium-ion

7  Rechargeable Batteries had been determined by a competitive market.

8  ## JURISDICTION AND VENUE

9       5.     Plaintiff brings this action under §§ 4, 12 and 16 of the Clayton Act (15 U.S.C.

10  §§ 15, 22 and 26) for treble damages and injunctive relief, as well as reasonable attorneys' fees and

11  costs with respect to the injuries sustained by plaintiff arising from violations by Defendants of the

12  federal antitrust laws, including § 1 of the Sherman Antitrust Act (15 U.S.C. § 1).

13       6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a)

14  and 1367.

15       7.     Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15 and 22, and 28

16  U.S.C. § 1391(b) and (c), in that at least one of the Defendants resides in this judicial district, is

17  licensed to do business or is doing business in this judicial district.

18  ## PARTIES

19       8.     Plaintiff Charles Carte is a resident of Nevada. During the Class Period, Plaintiff

20  purchased Lithium-ion Rechargeable Batteries directly from one or more of the named Defendants.

21  As a result of the conspiracy alleged herein, Plaintiff has been injured in its business or property in

22  that the price he paid for the Lithium-ion Rechargeable Batteries was artificially raised, maintained

23  or stabilized at a supra-competitive level by defendants and their co-conspirators.

24       9.     Defendant Samsung SDI Co., Ltd. ("Samsung SDI") is a Korean corporation with its

25  principal executive offices at 575 Shin-Dong, Youngtong-Gu, Suwon, Gyeonggi South Korea.

26  Defendant Samsung SDI Co., Ltd. is 20% owned by the Korean conglomerate Samsung Electronics,

27  Inc. Defendant Samsung SDI is the world's largest manufacturer of Lithium-ion Rechargeable

28  Batteries. Defendant Samsung SDI, either directly or through a wholly owned subsidiary,

1    participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold
2    Lithium-ion Rechargeable Batteries throughout the United States, including in this district, during
3    the Class Period.

4         10.     Defendant Samsung SDI America, Inc. ("Samsung SDI America") is a California
5    corporation with its principal executive offices at 85 W. Tasman Drive, San Jose, CA 95134-1703.
6    Samsung SDI America is a wholly owned subsidiary of Defendant Samsung SDI.  Defendant
7    Samsung SDI America, either directly or through a wholly owned subsidiary, participated in the
8    conspiracy alleged in this complaint and manufactured, marketed and/or sold Lithium-ion
9    Rechargeable Batteries throughout the United States, including in this district, during the Class
10   Period.

11        11.     Defendants Samsung SDI and Samsung SDI America are referred to herein as the
12   "Samsung."

13        12.     Defendant LG Chem, Ltd. ("LG Chem") is a Korean corporation with its principal
14   executive offices at 20 Yeouido-dong, Yeongdeungpo-gu, Seoul, South Korea.  Defendant LG
15   Chem is an affiliate of Seoul-based conglomerate LG Electronics. LG Chem is one of the world's
16   leading manufacturers of Lithium-ion Rechargeable Batteries. Defendant LG Chem, either directly
17   or through a wholly owned subsidiary, participated in the conspiracy alleged in this complaint and
18   manufactured, marketed and/or sold Lithium-ion Rechargeable Batteries throughout the United
19   States, including in this district, during the Class Period.

20        13.     Defendant LG Chem America, Inc. ("LG Chem America") is a New Jersey
21   corporation with its principal place ofbusiness at 1000 Sylvan Avenue, Englewood Cliffs, New
22   Jersey, 07632. Defendant LG Chem America is a wholly owned subsidiary of Defendant LG Chem.
23   Defendant LG Chem America, either directly or through a wholly owned subsidiary, participated in
24   the conspiracy alleged in this complaint and manufactured, marketed and/or sold Lithium-ion
25   Rechargeable Batteries throughout the United States, including in this district, during the Class
26   Period.

27        14.     Defendants LG Chem and LG Chem America are referred to collectively herein as
28   "LG Chem."

1    15.    Defendant Panasonic Corporation is a Japanese corporation with its principal

2  executive offices at 1006 Oaza Kadoma, Osaka 571-8501, Japan. Up until approximately October 1,

3  2008, Panasonic Corporation was known as Matsushita Electric Industrial Co., Ltd. Defendant

4  Panasonic manufactures and sells Lithium-ion Rechargeable Batteries under the Panasonic name

5  and also under the name of Defendant and wholly owned subsidiary Sanyo Electric Co., Ltd.  With

6  respect to those batteries sold under the Panasonic name, they are produced by Panasonic's internal

7  division called "Energy Company." Defendant Panasonic Corporation is one of the world's leading

8  manufacturers of Lithium-ion Rechargeable Batteries. Defendant Panasonic Corporation, either

9  directly or through a wholly owned subsidiary, participated in the conspiracy alleged in this

10  complaint and manufactured, marketed and/or sold Lithium-ion Rechargeable Batteries throughout

11  the United States, including in this district, during the Class Period.

12    16.    Defendant Panasonic Corporation of North America, formerly known as Matsushita

13  Electric Corporation of America, is a Delaware Corporation with its principal executive offices at 1

14  Panasonic Way, Secaucus, New Jersey. Panasonic Corporation of North America is a wholly owned

15  and controlled subsidiary of Defendant Panasonic Corporation. Defendant Panasonic Corporation of

16  North America, either directly or through a wholly owned subsidiary, participated in the conspiracy

17  alleged in this complaint and manufactured, marketed and/or sold Lithium-ion Rechargeable

18  Batteries throughout the United States, including in this district, during the Class Period.

19    17.    Defendant Sanyo Electric Co., Ltd. ("Sanyo") is a Japanese corporation with its

20  principal executive offices at 5-5 Keihan-Hondori, 2-chome, Moriguchi, Osaka 570-8677, Japan.

21  Defendant Sanyo is one of the largest manufacturers and suppliers of Lithium-ion Rechargeable

22  Batteries in the world.  As of December 9, 2009, Defendant Sanyo became a wholly owned

23  subsidiary of Defendant Panasonic Corporation.  Defendant Sanyo, either directly or through a

24  wholly owned subsidiary, participated in the conspiracy alleged in this complaint and manufactured,

25  marketed and/or sold Lithium-ion Rechargeable Batteries throughout the United States, including in

26  this district, during the Class Period.

27    18.    Defendant Sanyo North America Corporation is a Delaware corporation with its

28  principal executive offices at 2055 Sanyo Avenue, San Diego, California 92154. Defendant Sanyo

1  North America Corporation is a wholly owned subsidiary of Defendant Sanyo Electric Co., Ltd.

2  Defendant Sanyo North America Corporation, either directly or through a wholly owned subsidiary,

3  participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold

4  Lithium-ion Rechargeable Batteries throughout the United States, including in this district, during

5  the Class Period.

6       19.    Panasonic Corporation, Panasonic Corporation of North America, Sanyo Electric,

7  Co., Ltd., and Sanyo North America Corporation are referred to collectively herein as "Panasonic."

8       20.    Defendant Sony Corporation is a Japanese corporation with its principal executive

9  offices at 7-1 Konan I-Chome, Minato-Ku, Tokyo, Japan.  Defendant Sony Corporation is one of

10  the world's leading suppliers of Lithium-ion Rechargeable Batteries. Defendant Sony Corporation,

11  either directly or through a wholly owned subsidiary, participated in the conspiracy alleged in this

12  complaint and manufactured, marketed and/or sold Lithium-ion Rechargeable Batteries throughout

13  the United States, including in this district, during the Class Period.

14       21.    Defendant Sony Energy Devices Corporation is a Japanese corporation with its

15  principal executive offices at 1-1 Shimosugishita, Takakura, Hiwada-machi, Koriyama-shi,

16  Fukushima, Japan. Defendant Sony Energy Devices Corporation is a wholly owned subsidiary of

17  defendant Sony Corporation. Sony Corporation manufactures its Lithium-ion Rechargeable

18  Batteries through its Sony Energy Devices Corporation subsidiary. Sony Energy Devices

19  Corporation manufactures its Lithium-ion Rechargeable Batteries at plants located in Japan,

20  Singapore, and China.  Defendant Sony Energy Devices Corporation, either directly or through a

21  wholly owned subsidiary, participated in the conspiracy alleged in this complaint and manufactured,

22  marketed and/or sold Lithium-ion Rechargeable Batteries throughout the United States, including in

23  this district, during the Class Period.

24       22.    Defendant Sony Electronics, Inc. is a Delaware corporation with its principal

25  executive offices at 16530 Via Esprillo, San Diego, CA 92127. Defendant Sony Electronics, Inc. is

26  a wholly owned subsidiary of defendant Sony Corporation.  Defendant Sony Electronics, Inc., either

27  directly or through a wholly owned subsidiary, participated in the conspiracy alleged in this

28

1    complaint and manufactured, marketed and/or sold Lithium-ion Rechargeable Batteries throughout
2    the United States, including in this district, during the Class Period.

3        23.    Defendants Sony Corporation, Sony Energy Devices Corporation, and Sony
4    Electronics, Inc. are referred to herein as "Sony."

5        24.    Defendant Hitachi, Ltd. is a Japanese company with its principal executive office at
6    6-6, Marunouchi l-chome, Chiyoda-ku, Tokyo, 100-8280, Japan. Defendant Hitachi, Ltd.
7    manufactures and sells Lithium-ion Rechargeable Batteries through its Components and Devices
8    Business Unit.  Defendant Hitachi, Ltd., either directly, or through a wholly owned subsidiary,
9    participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold
10   Lithium-ion Rechargeable Batteries throughout the United States, including in this district, during
11   the Class Period.

12       25.    Defendant Hitachi Maxell, Ltd. ("Hitachi-Maxell") is a Japanese corporation with its
13   principal executive office at 2-18-2 Iidabashi, Chiyoda-ku, Tokyo, 102-8521 Japan. Defendant
14   Hitachi-Maxell is a wholly owned subsidiary of Defendant Hitachi, Ltd. Hitachi-Maxell was
15   founded in 1960 and manufactures and sells batteries through its batteries business unit. Defendant
16   Hitachi-Maxell, either directly, or through a wholly owned subsidiary, participated in the conspiracy
17   alleged in this complaint and manufactured, marketed and/or sold Lithium-ion Rechargeable
18   Batteries throughout the United States, including in this district, during the Class Period.

19       26.    Defendant Maxell Corporation of America ("Maxell") is a New Jersey corporation
20   with its principal executive offices at 3 Garett Mountain Plaza, 3rd Floor, Suite 300, Woodland Park,
21   New Jersey, 07424. Defendant Maxell, either directly, or through a wholly owned subsidiary,
22   participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold
23   Lithium-ion Rechargeable Batteries that were distributed throughout the United States, including in
24   this district, during the Class Period.

25       27.    Defendants Hitachi, Ltd., Hitachi-Maxell, Ltd., and Maxell Corporation of America
26   are referred to herein as "Hitachi."

27

28

1    **CLASS ACTION ALLEGATIONS**

2        28.    Plaintiff brings this action both on behalf of himself, and as a class action pursuant

3    to Federal Rules of Civil Procedure, Rule 23(a) and (b)(3), on behalf of the following class (the

4    "Class"):

5          All individuals and entities who, during the period from January 1, 2002
           through the present (the "Class Period"), purchased Lithium-ion
6          Rechargeable Batteries in the United States directly from one or more of
           the Defendants, their subsidiaries, or their affiliates. Excluded from the
7          Class are Defendants and their parents, subsidiaries, affiliates, and all
           governmental entities.
8

9        29.    Plaintiff does not know the exact number of class members because such information

10   is in the exclusive control of Defendants. Plaintiff believes that, due to the nature of the trade and

11   commerce involved, there are most likely thousands of class members, geographically dispersed

12   throughout the United States such that joinder of all class members is impracticable.

13       30.    Plaintiff's claim is typical of the claims of the class in that plaintiff is a direct

14   purchaser of Lithium-ion Rechargeable Batteries, all Class members were damaged by the same

15   wrongful conduct of defendants and their co-conspirators as alleged herein, and the relief sought is

16   common to the class.

17       31.    Numerous questions of law or fact arise from defendants' anticompetitive conduct

18   that is common to the class. Among the questions of law or fact common to the class are:

19             a.    whether defendants engaged in a contract, combination or conspiracy

20                   among themselves to fix, maintain or stabilize the prices of, or allocate the

21                   market for, Lithium-ion Rechargeable Batteries sold in the United States;

22             b.    whether the conduct of Defendants caused prices of Lithium-ion

23                   Rechargeable Batteries to be artificially inflated to non-competitive levels;

24                   and;

25             c.    whether plaintiff and other members of the class were injured by the

26                   conduct of Defendants and, if so, the appropriate class-wide measure of

27                   damages and appropriate injunctive relief.

28

32.     These common questions of law or fact are common to the class, and predominate over any other questions affecting only individual class members.

33.     Plaintiff will fairly and adequately represent the interests of the class in that plaintiff is a typical direct purchaser of Lithium-ion Rechargeable Batteries and has no conflicts with any other member of the class.  Furthermore, plaintiff has retained competent counsel experienced in antitrust and class action litigation.

34.     A class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy.

35.     Prosecution of separate actions by individual class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants.

36.     Injunctive relief is appropriate as to the class as a whole because Defendants have acted or refused to act on grounds generally applicable to the class.

37.     Plaintiff reserves the right to expand, modify or alter the class definition in response to information learned during discovery.

## INTERSTATE AND FOREIGN TRADE AND COMMERCE

38.     During the Class Period, Defendants and their Co-conspirators, or one or more of their subsidiaries and/or affiliates sold and shipped substantial quantities of Lithium-ion Rechargeable Batteries in a continuous and uninterrupted flow of interstate and international commerce to customers located in states other than the states in which defendants are located.

39.     The business activities of Defendants that are the subject of this Complaint were within the flow of, and substantially affected, interstate trade and commerce.  Furthermore, each of the defendants and their co-conspirators used instrumentalities of interstate commerce to market and sell Lithium-ion Rechargeable Batteries.

40.     During the Class Period, Defendants, amongst whom are the largest Lithium-ion Rechargeable Batteries producers in the world, have most of the Lithium-ion Rechargeable Batteries sales in the global market.

41.     During the Class Period, Defendants and their Co-conspirators collectively imported at least tens of millions of Lithium-ion Rechargeable Batteries into the United States.

42.     Defendants and their Co-conspirators sell their Lithium-ion Rechargeable Batteries through various direct channels, including to manufacturers of electronic products and devices, to resellers of Lithium-ion Rechargeable Batteries and through the retail internet sites. Defendants operated (and some continue to operate) retail websites through which United States purchasers could purchase directly Lithium-ion Rechargeable Batteries. These include:

       (a)    Samsung.com (http://www.samsung.com/us/#latest-home);

       (b)    Sony Store (http://store.sony.com/webapp/wcs/stores/servlet/StoreCatalogDisplay?langId=-1&storeId=10151&catalogId=10551); and

       (c)    Panasonic USA (http://shop.panasonic.com/).

43.     Sony also operates brick and mortar sales outlets in the United States where its Lithium-ion Rechargeable Batteries can be purchased directly, such as the Sony Store at the Stanford Shopping Center in Palo Alto, California.

## THE LITHIUM-ION RECHARGEABLE BATTERY INDUSTRY

44.     Throughout the Class Period, defendants and their co-conspirators engaged in the business of marketing and selling Lithium-ion Rechargeable Batteries throughout the United States and the world.

45.     The rechargeable battery market is generally comprised of four types of secondary batteries: (1) Lithium-ion ("Li-ion"); (2) lead-acid; (3) nickel cadmium ("NiCad"); and (4) nickel-metal hydride ("NiMH"). Li-Ion batteries are by far the most popular type of rechargeable battery.

46.     Both Li-Ion batteries and NiMH batteries were introduced in or around 1990. Since that time, however, Lithium-ion Rechargeable Batteries have quickly become the most popular type of secondary battery, easily outpacing NiMH and NiCad batteries. The following graph (based on data from the Institute of Information Technology, Ltd.) shows the growth of Li-Ion Batteries versus NiMH and NiCad batteries:

1
2
3
4
5
6
7
8
9
10
11
12
13



14    47.    Lithium-ion Rechargeable Batteries are generally divided into four types: (1) small
15  cylindrical (solid body without terminals); (2) large cylindrical (solid body with large threaded
16  terminals); (3) pouch (soft, flat body such as those used in cell phones); and (4) prismatic
17  (square/rectangular, semi-hard plastic case with large threaded terminals). Each Defendant
18  manufactures and markets each of these types of Lithium-ion Rechargeable Batteries. Lithium ion
19  cylindrical or prismatic batteries are used primarily in notebooks, camcorders, mobile phones, and
20  other electronic devices.

21    48.    In addition to the four types of Lithium-ion Rechargeable Batteries described above,
22  there are also lithium ion polymer batteries. Lithium ion polymer batteries enjoy more freedom in
23  shape which enables the battery to be tailored to fit the device. The exterior of the lithium ion
24  polymer battery is generally made of a laminate film which allows it to be more flexible in terms of
25  its shape.

26    49.    Lithium-ion Rechargeable Batteries, as defined herein, includes cylindrical,
27  prismatic, pouch and polymer Li-Ion Batteries.

28

CLASS ACTION COMPLAINT
10

1    50.    Lithium-ion Rechargeable Batteries, by virtue of their superior performance
2  characteristics, are superior to all other types of rechargeable batteries. Lithium-ion Rechargeable
3  batteries are relatively small, light weight, possess a high energy density, and are immune from the
4  "memory effect" (*i.e.* they do not need to be fully charged before using or discharged completely
5  before re-charging). Accordingly, Lithium-ion Rechargeable Batteries have become the standard
6  battery used in consumer electronic products. It is estimated that about 50% of all Lithium-ion
7  Rechargeable Batteries used today are used in mobile phones and notebook computers. The rest are
8  used in digital cameras, power tools, and other consumer electronic devices. The following graph
9  (which incorporates information from the Institute of Information Technology, Ltd.) depicts the
10  various applications that Lithium-ion Rechargeable Batteries are used in:



20    51.    Lithium-ion Rechargeable Batteries are also fungible, highly standardized products
21  which are interchangeable among the same type and across manufacturers. International standard-
22  setting organizations, such as the International Electrotechnical Commission ("IEC") or the Institute
23  of Electrical and Electronics Engineers ("IEEE") develop standards to be followed by the
24  manufacturers of Lithium-ion Rechargeable Batteries so that products which use Lithium-ion
25  Rechargeable Batteries can be developed to accommodate a specific Lithium-ion Rechargeable
26  Battery.

27    52.    Lithium-ion Rechargeable Batteries were first commercialized by Defendant Sony in
28  or around 1991. Thereafter, between 1991 and late 1999, the market for Lithium-ion Rechargeable

1   Batteries was primarily controlled by Japanese manufacturers Sony and Panasonic. Prices for

2   Lithium-ion Rechargeable Batteries during this time period remained stable.

3       53.    In or around 1999, Defendants Sony and Panasonic faced their first competitive

4   threat from outside Japan as lower cost manufacturers from Korea entered the market. Beginning in

5   or around 1997, the Korean government promoted research and development focused on battery

6   manufacturers in an effort to create the secondary battery industry. As a result, Korea established

7   the second automated mass battery production system in the world. The Korean Battery R&D

8   Association took the lead in the "small-size secondary battery development project" together with

9   11 manufacturers, 10 universities and research centers, investing 54.87 billion won over 5 years

10  from 1997 to 2002.

11      54.    In 1999, Defendant LG Chem became the first Korean manufacturer of Lithium-ion

12  Rechargeable Batteries followed closely by Defendant Samsung SDI. The introduction of

13  competition from the Korean Defendants -LG Chem and Samsung SDI, caused worldwide prices

14  for Lithium-ion Rechargeable Batteries to decline sharply. In fact, during the two year period from

15  2000-2002, the prices for Lithium-ion Rechargeable Batteries fell by nearly 50%. Prices fell

16  despite strong increase in demand for Lithium-ion Rechargeable Batteries used in devices such as

17  mobile telephones and notebook computers.

18      55.    The entry of Defendants Samsung SDI and LG Chem changed the marketplace for

19  Lithium-ion Rechargeable Batteries. Through aggressive price competition, Defendants Samsung

20  SDI and LG Chem secured approximately 20% of the worldwide market for Lithium-ion

21  Rechargeable Batteries by 2003.

22      56.    Japanese Defendants Sony, Panasonic, and Hitachi, sought to stem the rapid decline

23  in Lithium Ion Rechargeable Battery prices and their rapid loss of market share from the intense

24  competition from Korean Defendants Samsung SDI and LG Chem. In or around the end of 2001,

25  the Defendants entered into an illegal conspiracy to stabilize and raise prices for Lithium-ion

26  Rechargeable Batteries. Beginning in early 2002, Lithium-ion Rechargeable Batteries prices

27  immediately stabilized after nearly a two-year period of rapid price decreases. From January 2002 -

28

1   July 2008, despite the increase of the Korean Defendants' supply in the marketplace, the prices of

2   Lithium-ion Rechargeable Batteries prices increased for most of the 2002-2008 period.

3       57.     On or about 2008, the consumer market for electronic devices suffered a decrease in

4   demand from the impact of the world financial crisis.  From approximately January 2008 to the end

5   of January 2009, the prices for Lithium-ion Rechargeable Batteries declined by approximately 40%.

6       58.     In order to stem the rapid price decline in 2008, Defendants agreed to cut production

7   of Lithium-ion Rechargeable Batteries by almost 66%. By coordinating this reduction in supply of

8   Lithium-ion Rechargeable Batteries, Defendants were able to stabilize prices for Lithium-ion

9   Rechargeable Batteries by the end of 2009.

10      59.     Lithium-ion Rechargeable Battery prices remained stable from 2009 until 2011

11  when Defendants received notice they were being investigated by the U.S. Department of Justice

12  and the European Union for price fixing.  Since the investigation by the U.S. and European

13  authorities, the prices for Lithium-ion Rechargeable Batteries have fallen approximately 10%.

14      60.     Below is a chart compiled from data located at the Bank of Korea showing the

15  domestic producer price for Lithium Ion Rechargeable Batteries for 2001 through 2011.



61.     There are substantial barriers to entry into the market for Lithium-ion Rechargeable

Batteries.  A new entrant into the business would face costly and lengthy start-up costs, including

multi-million dollar costs associated with research and development, manufacturing plants and

1  equipment, energy, transportation distribution infrastructure, skilled labor and long-standing

2  customer relationships.

3      62.    In addition to the large infrastructure costs, any new entrant will be required to

4  comply with various environmental regulations in whatever jurisdiction such plant is built.

5  Compliance with such regulations will require extensive testing and the receipt of government

6  approvals, all of which will take many years.

7      63.    Demand for Lithium-ion Rechargeable Batteries is inelastic because there are no

8  close substitutes for these products due to their performance characteristics.

9      64.    In or around May 2011, defendant Sony Corporation disclosed that its wholly owned

10  U.S. subsidiary, Sony Electronics, Inc., received a subpoena from the Antitrust Division of the U.S.

11  Department of Justice concerning its "secondary batteries" business. Specifically, Sony disclosed

12  that:

13      In May 2011, Sony Corporation's U.S. subsidiary, Sony Electronics, Inc., received a
        subpoena from the U.S. Department of Justice ("DOJ") Antitrust Division seeking
14      information about its secondary battery business. Sony understands that the DOJ and
        agencies outside the United States are investigating competition in the secondary batteries
15      market. Based on the stage of the proceedings, it is not possible to estimate the amount of
        loss or range of possible loss, if any, that might result from adverse judgments, settlements
16      or other resolutions of this matter.

17  Sony Corporation Form 20-F, fiscal year ending March 31, 2012.

18      65.    Around the same time, according to a Korean news article, a source from the U.S.

19  Department of Justice confirmed that it was conducting a criminal investigation into potential price

20  fixing with respect to the sale of secondary batteries in the United States and has been since the first

21  half of 2011. The same article quoted the source as stating that the investigation is in its final stages

22  and that criminal charges are likely to be filed.

23      66.    On or about August 20, 2012, LG Chem confirmed that it also was the target of the

24  investigation being conducted by the U.S. Department of Justice.

25      67.    Other news articles have confined that in addition to defendants Sony and LG Chem,

26  Samsung SDI and Panasonic are also under investigation by the DOJ for price fixing with respect to

27  the sale of rechargeable batteries.  It is significant that Defendants' anticompetitive behavior is the

28  subject of a criminal grand jury investigation being conducted by the Department of Justice. In

order for the DOJ to institute a grand jury investigation, a DOJ Antitrust Division attorney must believe that a crime has been committed and prepare a detailed memorandum to that effect.[1] Following a review of that memorandum, the request for grand a jury must be approved by the Assistant Attorney General for the Antitrust Division, based on the standard that a criminal violation may have occurred.  In addition, the fact that the DOJ Antirust Division investigation is criminal, as opposed to civil, is significant. The Antitrust Division's "Standards for Determining Whether to Proceed by Civil or Criminal Investigation" state: "[i]n general, current Division policy is to proceed by criminal investigation and prosecution in cases involving horizontal, *per se* unlawful agreements such as price fixing, bid rigging and horizontal customer and territorial allocations."[2] Accordingly, the existence of a criminal investigation into the market for Lithium-ion Rechargeable Batteries supports the existence of the conspiracy alleged in this complaint.

68.     Many of the Defendants and Co-conspirators named herein have a long history of collusion, and have been involved in antitrust investigations into other technology-related products, or have admitted to participating in anticompetitive cartels involving technology-related or other products.  To the extent these prior instances of conspiratorial conduct involved consumer electronics products, the products in question were marketed through the same or related channels used for the marketing of Lithium-ion Rechargeable Batteries and were overseen by the same employees, divisions or departments within the relevant Defendant for at least a portion of the Class Period.

69.     Televisions:  In February of 1993, the Japan Fair Trade Commission ("JFTC") entered a cease and desist order against the sales subsidiaries of Sony, Hitachi and what is now Panasonic, finding that the subsidiaries requested large discount stores in the Akihabara district in

---

[1] *See* Antitrust Grand Jury Practice Manual, Vol. I, Ch. LB.! (1991) ("[i]f a Division attorney believes that a criminal violation ofthe antitrust laws has occurred, he should prepare a memorandum requesting authority to conduct a grand jury investigation.")(available at http://www.justice.gov/atr/public/guidelines/206542.htm).

[2] *See* Antitrust Division Manual, Chapter III.C.5, 111-20 (2009), (available at http://www.justice.gov.atr/public /divisionmanual/chapter3.pdf.

1    Tokyo and the Nipponbashi shopping district in Osaka not to display discount rates larger than 10

2    percent of the maker's recommended retail prices for products including televisions on price tags at

3    stores and in their handbills.  The JFTC noted that similar practices had occurred in 1988 when it

4    instructed two major industry associations, including the Japan Electronics Industry Association, to

5    stop them, but the practices had continued.

6        70.    Magnetic Videotapes:  In November of 2007, the European Commission ("EC")

7    fined Sony and various related entities and the Hitachi Maxell Limited joint venture $110 million

8    for fixing the prices of professional videotapes sold in Europe between 1999 and 2002.

9        71.    DRAM: In October of 2005, Samsung admitted guilt and paid a $300 million fine

10   following an investigation by the DOJ into price-fixing among manufacturers of DRAM. In

11   addition, on May 19, 2010, the EC announced that it was fining ten companies a total of €331

12   million for participating in an international cartel to fix DRAM prices. Among those fined were

13   Samsung, and Hitachi.

14       72.    Cathode Ray Tubes: In a cease and desist order dated October 7, 2009, the JFTC

15   levied $37.4 million in fines against five companiesfor alleged participation in a price-fixing cartel

16   for CRTs, including Panasonic, LG Philips Displays Korea Co. and Samsung SDI and their

17   affiliates.

18       73.    On November 26, 2009, the EC confirmed that it had sent a Statement of

19   Objections to participants in the CRTs cartel in Europe.  It has been reported that "[t]he EC

20   believes that Chunghwa Picture Tubes (a unit of Tatung), LG Electronics, Matsushita (Panasonic),

21   Philips, Samsung and Toshiba have formed cartels to boost pricing of CRT-based devices, such as

22   computer monitors or TV-sets."

23       74.    In November of 2007, Hitachi Canada Ltd., a subsidiary of Hitachi, received

24   requests for information from the Canadian Competition Bureau with respect to alleged antitrust

25   violations relating to CRTs.

26       75.    TFT-LCD: The DOJ, the EC, and the JFTC have also investigated Samsung, LG and

27   Hitachi, among others, concerning collusion among manufacturers of TFT-LCDs.

28

76.     In December of 2008, the JFTC fined Sharp and Hitachi with respect to a conspiracy involving TFT-LCDs sold for use in Nintendo game consoles.

77.     Also in December of 2008, the DOJ announced that LG Display, a wholly owned Korean subsidiary of LG Electronics, pleaded guilty to aninformation alleging antitrust price-fixing allegations with respect to TFT-LCDs and had agreed to pay a $400 million fine.

78.     On March 10, 2009, the DOJ announced that Hitachi Displays, Ltd. had pled guilty to participation in the price-fixing conspiracy involving TFT-LCDs and had agreed to pay a $31 million fine.

79.     Although it has not been publicly acknowledged by Samsung, it is widely believed that Samsung Electronics Corporation (SEC) is in the DOJ's leniency program with respect to the investigation into the market for TFT-LCDs, meaning that it has admitted its participation in the cartel.

80.     In July of 2009, the EC confirmed that it had sent a Statement of Objections to participants in the TFT-LCD cartel in Europe.

81.     Optical Disk Drives: In September 2011, Hitachi-LG Data Storage, Inc. pled guilty and paid a $21.1 million fine for participating in various conspiracies to rig bids and fix prices for ODDs during the period from June 2004 through September 2009. In addition, three Hitachi-LG Data Storage executives also agreed to plead guilty for participating in the same conspiracy. In December 2011, Yong Kuen Park, Sang Hun Kim, and SikHur agreed to plead guilty for participating in the conspiracy with respect to ODDs during the period November 2005 through September 2009. All three agreed to serve prison time in the United States and pay criminal fines.

82.     As in the TFT-LCD industry, many of the Defendants here are not just the major manufacturers and sellers of the Lithium-ion Rechargeable Batteries, but are also vertically-integrated major manufacturers of products containing Lithium-ion Rechargeable Batteries. For example, the LG and Samsung entities manufactured and sold both TFT-LCD panels as well as TFT-LCD flat panel televisions. Here LG, Samsung, and Sony manufacture and sell both Lithium-ion Rechargeable Batteries and products containing Lithium-ion Rechargeable Batteries.

1     83.    The Lithium-ion Rechargeable Battery industry has a similar oligopoly structure to

2  that of the TFT-LCD, DRAM and CRT industries. The Defendants' entry into price fixing

3  agreements in those markets (which include many of the same foreign companies) supports the

4  DOJ's investigation and other evidence showing the existence of an anticompetitive conduct in the

5  Lithium-ion Rechargeable Batteries market.

6     84.    The established illegal conduct of Hitachi, LG, Panasonic, Sony and Samsung in a

7  wide variety of product markets across the world, including the United States, is illustrative of

8  Defendants' respective corporate cultures which encourage illegal activities aimed at furthering the

9  company's bottom line at the expense of consumers.

10     85.    For example, in November of 2007, Kim Yong Chul, the former chief lawyer for

11  Samsung, admitted that the company "instructed me to commit crimes." Mr. Chul continued by

12  saying that "[a] basic responsibility for all Samsung executives is to do illegal lobbying, buying

13  people with money." Mr. Chul also acknowledged that he fabricated court evidence on behalf of

14  the company and its executives. Further, several Samsung executives have recently been convicted

15  of bribery and other white collar crimes.

16     86.    The facts as alleged herein show that the conduct of Defendants was directed both

17  at customers in the United States and at United States import commerce for Lithium-ion

18  Rechargeable Batteries. The conduct alleged herein was directed specifically at customers

19  throughout the United States.

20                   **VIOLATIONS ALLEGED**

21     87.    Beginning at least as early as January 1, 2002, the exact date being unknown to

22  plaintiff, defendants, by and through their officers, directors, employees, agents, or other

23  representatives, entered in a continuing contract, combination or conspiracy to unreasonably restrain

24  trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

25     88.    Defendants, by their unlawful conspiracy, artificially raised, inflated and maintained

26  the market price of Lithium-ion Rechargeable Batteries as herein alleged.

27     89.    The contract, combination or conspiracy consisted of a continuing agreement,

28  understanding and concert of action among defendants and their co-conspirators, the substantial

1   terms of which were to fix, raise, maintain and stabilize the prices of, and/or allocate the market

2   for, Lithium-ion Rechargeable Batteries they sold in the United States.

3       90.    For the purpose of formulating and effectuating their contract, combination or

4   conspiracy, defendants and their co-conspirators did those things they contracted, combined or

5   conspired to do, including:

6           a.    participating in meetings and conversations to discuss the prices of and/or

7               allocate the market for Lithium-ion Rechargeable Batteries;

8           b.    agreeing to manipulate prices and supply so as to boost sagging Lithium-

9               ion Rechargeable Batteries sales in a manner that deprived direct

10              purchasers of free and open competition;

11          c.    issuing price announcements and price quotations in accordance with the

12              agreements reached; and

13          d.    selling Lithium-ion Rechargeable Batteries to customers in the United States

14              at non-competitive prices.

15      91.    As a direct result of the unlawful conduct of Defendants and their co-conspirators in

16  furtherance of their continuing contract, combination or conspiracy, plaintiff and other members of

17  the class have been injured in their business and property in that they have paid more for Lithium-

18  ion Rechargeable Batteries than they would have paid in the absence of defendants' price fixing.

19                                  **EFFECTS**

20      1.    The above combination and conspiracy has had the following effects, among

21  others:

22          a.    price competition in the sale of Lithium-ion Rechargeable Batteries by

23              defendants and their co-conspirators has been restrained, suppressed and

24              eliminated throughout the United States;

25          b.    prices for Lithium-ion Rechargeable Batteries sold by Defendants have

26              been raised, fixed, maintained and stabilized at artificially high and

27              noncompetitive levels throughout the United States; and

28

CLASS ACTION COMPLAINT
19

1

2

3

        c.     direct purchasers of Lithium-ion Rechargeable Batteries from Defendants have been deprived of the benefit of free and open competition in the purchase of Lithium-ion Rechargeable Batteries.

4

5

6

7

92.    As a direct and proximate result of the unlawful conduct of defendants, plaintiff and other members of the class have been injured in their business and property in that they paid more for Lithium-ion Rechargeable Batteries than they otherwise would have paid in the absence of the unlawful conduct of Defendants.

8

## FRAUDULENT CONCEALMENT

9

10

11

12

13

93.    Plaintiff and members of the Class did not discover and could not discover through the exercise of reasonable diligence the existence of the conspiracy alleged herein until mid-2011, when it was first publicly reported that manufacturers of Lithium-ion Rechargeable Batteries were under investigation by antitrust authorities in the United States, and elsewhere in the world, for anticompetitive conduct.

14

15

16

17

18

19

20

94.    Defendants engaged in numerous acts and representations that were intended to and did conceal the collusion that they were engaging in concerning Lithium-ion Rechargeable Batteries pricing. Because Defendants' and their Co-conspirators' agreements, understandings, and conspiracies were kept secret, Plaintiff and members of the Class were unaware of Defendants' and their Co-conspirators' unlawful conduct alleged herein, and they did not know before that time that they were paying artificially high prices for Lithium-ion Rechargeable Batteries throughout the United States during the Class Period.

21

22

23

24

95.    By their very nature, Defendants' and their Co-conspirators' price-fixing conspiracy was inherently self-concealing. The Lithium-ion Rechargeable Batteries industry is not exempt from antitrust regulation, and thus, before mid-2011, Plaintiff reasonably considered it to be a well-regulated competitive industry.

25

26

27

28

96.    In the context of the circumstances surrounding Defendants' and their Co-conspirators' pricing practices, Defendants' acts of concealment were more than sufficient to preclude suspicion by a reasonable person that Defendants' and their Co-conspirators' pricing was conspiratorial. Accordingly, a reasonable person under the circumstances would not have been

1 alerted to investigate the legitimacy of Defendants' and their Co-conspirators' Lithium-ion

2 Rechargeable Batteries prices before mid-2011.

3     97.    Plaintiff and members of the Class could not have discovered the alleged contract,

4 conspiracy, or combination at an earlier date by the exercise of reasonable diligence because of the

5 deceptive practices and techniques of secrecy employed by the Defendants and their Co-

6 conspirators to avoid detection of, and fraudulently conceal, their contract, combination or

7 conspiracy.

8     98.    As a result of the Discovery Rule and Defendants' and their Co-conspirators'

9 fraudulent concealment of their conspiracy, the running of any statute of limitations did not

10 commence until after 2011, and was tolled with respect to any claims that Plaintiff and members of

11 the Class have as a result of the anticompetitive conduct alleged in this Complaint.

12 **DAMAGES**

13     99.    During the Class Period, plaintiff and the other members of the class purchased

14 Lithium-ion Rechargeable Batteries directly from defendants, or their subsidiaries, agents, and/or

15 affiliates, and, by reason of the antitrust violations herein alleged, paid more for such products than

16 they would have paid in the absence of such antitrust violations.  As a result, plaintiff and the other

17 members of the Class have sustained damages to their business and property in an amount to be

18 determined at trial.

19 **PRAYER FOR RELIEF**

20     WHEREFORE, Plaintiff demands judgment against defendants as follows:

21     (1)    That the Court determine that this action may be maintained as a class action under

22 Rule 23 (b)(3) of the Federal Rules of Civil Procedure, that Plaintiff be certified as class

23 representative and Plaintiff's counsel be appointed as counsel for the Class;

24     (2)    That the unlawful contract, combination or conspiracy alleged be adjudged and

25 decreed to be an unreasonable restraint of trade or commerce in violation of Section 1 of the

26 Sherman Act and Section 4 of the Clayton Act;

27

28

1   (3)  That Plaintiff and the Class recover damages, as provided by law, determined to have

2 been sustained as to each of them, in an amount to be trebled in accordance with the antitrust laws,

3 and that judgment be entered against Defendants on behalf of Plaintiff and of the Class;

4   (4)  That Plaintiff and the Class recover their costs of the suit, including attorneys' fees,

5 as provided by law;

6   (5)  That Defendants, their subsidiaries, affiliates, successors, transferees, assignees and

7 the respective officers, directors, partners, agents, and employees thereof and all other persons

8 acting or claiming to act on their behalf be permanently enjoined and restrained from continuing

9 and maintaining the combination, conspiracy, or agreement alleged herein;

10   (6)  That Plaintiff and members of the Class be awarded pre-judgment and post-judgment

11 interest, and that such interest be awarded at the highest legal rate from and after the date of service

12 of the initial complaint in this action; and

13   (7)  For such other and further relief as is just under the circumstances.

14             **JURY TRIAL DEMANDED**

15     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury

16 of all of the claims asserted in this Complaint that are so triable.

17

18 DATED: October 11, 2012

GUIDO SAVERI (22349)
R. ALEXANDER SAVERI (173102)
GEOFFREY C. RUSHING (126910)
CADIO ZIRPOLI (179108)
DAVID Y. HWU (281780)
**SAVERI & SAVERI, INC.**
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

SUSAN KUPFER (141724)
**GLANCY BINKOW & GOLDBERG LLP**
One Embarcadero Center, Suite 760
San Francisco, CA 94111
Telephone: (415) 972-8160
Facsimile: (415) 972-8166

1

2

3
LEE ALBERT (Pro Hac to be filed)
GREGORY LINKH (Pro Hac to be filed)
**GLANCY BINKOW & GOLDBERG LLP**
77 Water St, 7th FL
New York, NY 10005
Telephone: (646) 722-4180

4

5

6

7
BRIAN P. MURRAY (Pro Hac to be filed)
**MURRAY FRANK LLP**
275 Madison Avenue
Suite 801
New York, NY 10016
Telephone: (212) 682-1818

8
*Attorneys for the Plaintiff*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28